May it please the court, my name is Andrew Koenig. I'm the attorney for plaintiff appellant Kay McCawley, and if I might reserve two minutes for rebuttal. As an attorney that does exclusively Social Security representation, my goal, and I always hope the administrative law judge's goal, is to come up to a just result that flows naturally from the evidence. Here I was arguing and trying to convince the ALJ that the just result here is allow this woman to have this plate removed from her tibia that's causing her pain, swelling, catching, trip and fall, and then perhaps have a case review within a year to see if there's sufficient medical improvement to allow her to go back to work. Had that result happened, I'm convinced my client would be potentially back to work by now. She is stuck though with this plate and 14 screws in her right tibia because she cannot afford to get this surgery to remove them. So you've got to persuade us that she is currently, has been currently disabled for a year? At least 12 consecutive months, or expected to last at least 12 consecutive months. So I think you should focus on that? The initial injury was from May of 2005. Her initial orthopedic surgeon, Dr. Chandler, who unfortunately retired within 12 months of the surgery, did write the letter saying that she has this pain, she has catching, she needs to have this which is past the 12-month period. He retired. She then had to go to a family practice doctor through Partnership Health Center, which is the low-income county facility that she went to. Her treating doctor, Dr. Forney, agreed. Needs to have this plate removed. She has considerable pain. She was able to, Dr. Forney was also able to get a donated orthopedic examination from a Dr. Woods. Dr. Woods agreed. She needs to have this plate removed. She has a significant catching pain. All three doctors that have examined her agree this is what needs to have happen so that her pain, swelling, and catching can be relieved. But the issue is, despite the pain that she has from this and other symptoms, is she still able to work? Well, exactly. And obviously that's the key inquiry. And the vocational expert at the hearing basically identified the precise issue that needed to be resolved. We have a vocational expert who testified that if she is able to sit less than six hours and stand and walk less than two, then she is disabled. There are no jobs that would allow, obviously this is a full-time work standard, that would allow those types of restrictions. In the hearing, the vocational expert says, look, the form that Dr. Forney completed says about six hours. Rather ambiguous, she said, that could be six and a half, it could be five. I don't know exactly what that means. I need to get that clarified. This donated orthopedic examination was set up for after the hearing, so the hearing was left open to develop further evidence. Both Dr. Forney and Dr. Woods both came back with post-hearing evidence saying this is less than six hours as far as her ability to sit in an eight-hour workday. The Dr. Forney report is actually a clarification of what she had put in. These forms are sent from the hearing office under the authorization of the administrative law judge. They're vague. We don't know what about six hours means. The vocational expert says, I need to know precisely what it is. If it's less than six hours and less than two, she is disabled. We got the clarification we needed. If those two post-hearing opinions are adopted, there's no doubt this woman is disabled. The judge adopted all of Dr. Forney's report with the exception of that clarification. He stated that she can sit six hours or more and stand and walk no less than two hours. No doctor has stated that those are the restrictions. A judge has to have some evidence to support the ultimate opinion, and those are the two critical issues here. The only doctor that supported the ALJ's ultimate finding was specifically discredited, and that was a non-examining state agency reviewing doctor who just reviewed a partial file. We have three doctors all saying the same thing, none of which the ALJ credited, yet there was nothing as far as a ledger to support his ultimate finding. So, it was like he took one. I thought the Forney medical source statements were a little confusing, but it seems like the ALJ could have taken, took one from one version, the statement that it's, and one from the other version. Well, that's exactly right. And I guess, I mean, that seemed to me sort of an odd approach, but don't throw records like the 96.5 ESSR says, well, medical source statements, you can take a different, you can pick and choose. Basically, the ALJ is authorized to do that. So, why wasn't the ALJ authorized here to take one from column A and one from column B? Well, there still has to be substantial evidence for the judge's ultimate finding on these issues, and I would argue that if we're using a Social Security form that is vague, and the doctor puts the vague term that we all have been identified at the hearing, we need this clarified, okay? We go get the clarification, and I believe, I don't, you know, I never was able to get anything more than, you know, more explanation from Dr. Forney. I believe that after the orthopedic consultative examination was sent, report was sent back to Forney, that helped her, you know, clarify. She wrote in that error, as far as about six hours, it's less than six hours as far as sitting. But then she also changed the two hours. So, in the first one, she says, or Dr. Forney says, less than two hours, and the second one is no longer than two hours. Well, no. I believe she stated less than two hours, but she can't sit between one to two. I think she just tried to refine that a little bit, and I would argue that the judge considered this a change. I don't think that this is a change. I think this is just a clarification of a vague, you know, term. I would have loved to have an evaluation form that said, one, two, three, four, five, six hours. Let's get it defined that way, but we have this about six hours. The vocationalist expert says, I don't know if that's six and a half or five. I don't know. Get it clarified for me. So, what do you want us to do? I would like to have, well, obviously, I'd like to have Dr. Forney and Dr. Chandler and Dr. Woods all credited and order benefits paid, but if not, I would like a remand to get the judge with orders to, if you're not going to adopt Dr. Forney's opinions, you better have medical basis to support why you're saying she can sit six hours or more, and there's nothing in the record supporting that finding. Do you want to save some time?  Thank you. Thank you. There's a button down there on the side that you can... I was shown that this morning, and I thought I'd try to get by without it, but I guess I will. Looks better. Okay. Thank you. Good morning. May it please the Court, I am Pamela M. Wood for the Commissioner of Social Security. Judge Fletcher is quite correct that the issue in this case is not whether this woman needs continuing treatment, but at the time of the ALJ's decision, what she could do, and whether she could work. Now, Judge Ikuda is also correct, I believe it was, who pointed out that the ALJ appeared to try to accommodate both of these varying opinions by, in good faith, trying to resolve them. Appellant would have you believe that the strength requirements that the ALJ found are significantly different from these. They are significantly different from what Dr. Forney found. They, in fact, are not. They are very similar. Now, I also know that Appellant has argued that these limitations are vague. They are not. The Commissioner intentionally provides some margin in establishing limitations and in determining what level of work requires. So what is the substantial evidence supporting the ALJ's determination that she could sit, stand for eight hours? Dr. Forney's opinion, both of them, together, which the ALJ relied on, support the ALJ's decision. Let me explain. If you look at an RFC form, it has selections for standing, walking, about two hours, sitting, about six hours. The Commissioner's regulations also, ruling, actually also provides that in order for an individual to do a full range of work at a given exertional level, the individual must be able to perform only substantially all of the exertional and non-exertional functions required in the work at that level. Now, why does the Commissioner do this? It's because the Commissioner knows that these are judgment calls on the part of treating physicians, examining and non-examining physicians, the ALJ, pretty much everyone involved. The vocational expert even understood this. When she was faced with this scenario, her response was, that is a determination that will likely have to go to the judge. And she was absolutely correct, because this is not an exact science. There has to be some margin here which is distinct from being vague. And so the answer to your question is, what evidence substantially supports the ALJ's decision here? Dr. Forney. Okay, so the first one says she could stand less than two hours and sit about six hours. Correct. And so the counsel says to the VA, well, that doesn't add up to eight hours. So if she can't work eight hours, is she disabled? VE says yes. Well, again, the VE also acknowledged that this is a decision that's going to have to go to the judge. But if the judge is relying on this, how does this support it? Well, I think the ALJ takes this into consideration. And remember, when faced with Dr. Forney's initial opinion, the RFC, that is when the VE said, yes, there are jobs. The second opinion from Dr. Forney, which, again, the ALJ actually adopted part of it, which was even arguably more, showed more capacity for standing because it said she could stand potentially up to two hours. And then she, you know, then equivocates on the standing, I'm sorry, the sitting a little bit. But that's the point of the margin. The commissioner provides for that. He says, look, you only have to do substantially all of these requirements. If you can sit perhaps a few minutes less than six hours, if you can stand or walk perhaps a few minutes less than two hours, we're not going to do an addition here. We're providing a margin there. Counsel, I'd like you to turn to the commissioner's finding that he discredited her pain level. Now, we have several cases that say that we accept the petitioner's testimony about pain unless there's something that is way off. She has the symptoms, certainly. She's got this plate in her ankle that's bothering her. She's got all sorts of other pains that would suggest that she can't work the eight hours that are required. Why was the ALJ disregarding and discrediting her pain level? Well, the ALJ gave several reasons for that. Among them, her daily activities. Among them... What was it about her daily activities that would show that they were so inconsistent with the degree of pain that she testified to? Well, she... She performed at least limited household cleaning. She cooked. She drove an automobile. Now, if she's having the strength problems, the standing and walking and sitting problems, to the extent alleged, the driving alone would be a significant inability. Well, but if you drive because of necessity, that shouldn't discredit the fact that she's doing it with pain or great pain. I can testify to that myself. Yes, Your Honor. But the point is you can if you have to. And one works if one has to. In addition to driving, what else do you have? Again, the household cleaning. The... They're in the brief, but... Household cleaning, performing... Oh, was she... Shopping. Was she scrubbing the floors and her hands and knees or was she doing the dishes? She was... Household cleaning. General household cleaning. I'm going to have to respond that way. I would have to... That's okay. I understand. The ALJ also mentioned that her medical records didn't show that she was complaining about pain. I don't know if that was frequently or what the level was. That was just his mention. Is that supported by the record? I'm sorry. Would you ask the question again? The ALJ also mentioned that her medical reports didn't indicate complaints of uncontrolled pain. Well, I think that's correct. She did not take significant pain medication. She had some allegation trying to support the credibility of knee locking, but she testified that her knee didn't lock very much. I would also like to make another point. We have stated in our brief in several places, cited a lot of cases including Sykes and McKinney from the Eighth Circuit, indicating that the ALJ may rely on an individual's own statement regarding their abilities. Now, in particular regarding the plantar fasciitis, appellant admitted that she could... The only problem is she did prolonged standing and walking, which the ALJ procluded her from. Now, that citation is prefaced with a statement that disability determinations are medical assessments. That is not the commissioner's position. We do consider these administrative decisions. However, we fully support the Eighth Circuit's citation to the extent of the purpose of the citation, which was relying on their own statements regarding their abilities. So there you have two, at least, appellants complaining of knee locking and then testifying in their hearing that, well, it really doesn't lock all that much. She... The ALJ also talked about some inconsistencies in medical evidence. For instance, the ALJ expressly and correctly noted that Macaulay's complaint that she continued to experience severe symptoms resulting from her right ankle fracture were inconsistent with Dr. Wood's finding that orthopedic hardware was prominent but intact and with the finding of only trace edema. Again, according to her orthopedic surgeon, within a year of surgery, in fact, by... She had the surgery in May, I believe. By August, she was fully ambulatory and just prior to 12 months, she was out of cast and fully ambulatory and... And pain-free? Again... The... Do you want me to finish? Your time is up. That's okay. I would urge the Court to re-operate on the subjective complaints issue. Thank you. Thank you. You have two minutes for rebuttal. Can I put this back up? Thank you. Well, a couple points. As far as counsel's argument that this is not a precise... We can make inferences. It has to be substantially capable of working. SSR 96-8P defines sustained eight-hour-a-day work. It is that cut and dry, okay? If you cannot do eight-hour, five-day-a-week job on a sustained, consistent basis, you're disabled under 96-8P. So there is specificity as far as the standard here. As far as the point of this hardware being intact, I think too much is being read into that by the judge, ALJ, and counsel. An intact hardware just means it's not coming out. It doesn't mean it's not causing pain or catching on tendons, things like that. All doctors have said she needs to have this removed. All doctors have documented pain. And a couple of sites, we have Dr. Chandler at Excerptive Record, 206 and 208 pain in lower leg, or Dr. Forney, I should say, 206, 208, 213, 217, document pain. Dr. Woods, the orthopedic examiner, 220, Excerptive Record 220 to 222, documents pain. Dr. Chandler's April letter documents significant pain. Again, about two and a half weeks short of the 12-month durational period. It is documented in the record. Her testimony is well-supported as far as pain. She has to raise her leg for an hour a day above her heart to get the pain and swelling down on a daily basis. As far as the activities of daily living, if you review it, her husband does most of the driving. He's disabled on SSI. He's more functional than she is. He does most of the driving. She only drives when she has to. That was the past two minutes. Thank you very much. Thank you.
judges: B. Fletcher, Paez, Ikuta, Cjj